UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
MARC JOSEPH FRUHLING,                                       :
                              Plaintiff,                    :  **MEMORANDUM DECISION**
                                                            :  **AND ORDER**
           - against -                                      :
                                                            :  15-CV-4417 (BMC)
CAROLYN W. COLVIN, Acting Commissioner                      :
of Social Security,                                         :
                                                            :
                              Defendant.                    :
----------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiff seeks review of the final decision of the Acting Commissioner of Social Security, following a hearing before an Administrative Law Judge ("ALJ"), that he is not disabled for the purpose of receiving child's insurance benefits ("CIB") and supplemental security income ("SSI"). For the reasons set forth below, plaintiff's motion for judgment on the pleadings is granted, and the Commissioner's motion is denied.

Plaintiff filed an application for child's insurance benefits on May 11, 2012, and an application for SSI on April 13, 2012. Plaintiff alleged disability beginning January 1, 1996. The ALJ denied both of plaintiff's applications for benefits.

In his decision, the ALJ found that plaintiff had the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels but with the following non-exertional limitations: he can understand, remember, and carry out simple, routine, and unskilled tasks." The ALJ also found that plaintiff was a "younger individual" at the time of the alleged disability onset date, had a high school education, could communicate in English, and had no relevant past work. Under 20 C.F.R. §§ 404.1563(c) and 416.963(c), a "younger person" is defined as someone under the age of 50. For younger persons, the Social Security Administration does not

generally consider age to be a factor that would seriously affect the applicant's ability to adjust to other work. Id.

As to plaintiff's non-exertional limitations, the ALJ stated that those limitations would "have little or no effect on the occupational base of unskilled work at all exertional levels." Therefore, the ALJ used the Medical-Vocational Guidelines contained in 20 C.F.R. Part 404, Subpart P, Appendix 2, commonly referred to as "the Grid." The Grid takes into account the RFC in conjunction with age, education, and work experience, and indicates whether there are jobs that exist in significant numbers in the national economy that a claimant could perform. In plaintiff's case, it showed that there were such jobs. The ALJ did not request vocational expert testimony.

On review, the parties dispute whether the ALJ's formulation of the plaintiff's RFC is supported by substantial evidence. Plaintiff argues that the ALJ did not properly weigh the evidence, and did not develop the record by requesting a neurological examination or vocational expert testimony. Instead, argues plaintiff, the ALJ cherry-picked evidence to support his own view.

The ALJ's decision is not supported by substantial evidence and, in fact, it contains substantial errors. The most noticeable of these is the ALJ's misapprehension of plaintiff's alleged disability onset date. The ALJ correctly defined the alleged onset date as being January 1, 1996 and yet, every time he applied the alleged disability onset date to make a finding or apply the regulations, he instead relied on plaintiff's current age and factors. For instance, although the ALJ acknowledged that plaintiff was three years old on the alleged disability onset date, the decision then went on to state that plaintiff is a "younger individual age 18-49" who had "at least a high school diploma." I do not see from reading this decision how the ALJ could possibly

determine whether plaintiff was disabled as of the alleged disability onset date when the ALJ used the plaintiff's then-current age and incorrect level[1] of education at step five of the sequential evaluation process. If plaintiff was disabled as a child, it most certainly should affect the ALJ's view of the evidence as to whether plaintiff was disabled at the time he applied.

The import of the misapplied alleged disability onset date is disputed by the parties. I directed them to brief the issue of whether plaintiff's alleged disability onset date is the relevant date for determining, at step five, whether jobs exist in significant numbers in the national economy that plaintiff can perform, given that plaintiff was approximately three years old on the alleged disability onset date, and seeks disability from that date up to the present.

The Commissioner asserts that, although the ALJ incorrectly referenced plaintiff's alleged onset date in finding that plaintiff was a "younger individual," the ALJ nonetheless considered the correct factors. In support, the Commissioner refers to 20 C.F.R. § 404.1520(a)(2), which states that the five-step sequential evaluation process applies to applicants seeking CIB based on disability. According to the Commissioner, that regulation, combined with the fact that CIB entitlements begin the first month in which the application is filed, means that the ALJ had incorrectly considered plaintiff's onset age instead of the age of plaintiff at the time the application was filed. Nevertheless, argues the Commissioner, the mistake was inconsequential because the ALJ considered the correct factors to come to his conclusion.

In contrast, plaintiff argues that the Commissioner is confusing the issue of when plaintiff was entitled to first receive CIB with when the disability itself began. Plaintiff asserts that 20 C.F.R. § 404.350(b)(1) recognizes that if a claimant is are disabled at the time he turns 18, then he would be entitled to continue receiving CIB benefits, and that the Commissioner implicitly

---

[1] The record evidences that plaintiff did not receive a high school diploma, but instead completed 11 years of education in "self-contained" classes, after which he received an Individual Education Plan diploma, although the diploma was conditioned on completing two exams.

3

recognizes this point by noting that "entitlement to CIB ends the month before you turn 18 years old unless you are disabled."

I agree with plaintiff that the ALJ must determine if plaintiff was disabled at the alleged onset date or any time thereafter before plaintiff turned 18. The decision does not contemplate that plaintiff was potentially disabled before the date of the application. If the ALJ did consider and disbelieve plaintiff's allegations of childhood disability, such a finding is not at all clear from the record.

This is problematic both procedurally and substantively. Procedurally, the ALJ must make findings sufficient for the district court to review the decision and determine if it was supported by substantial evidence. See, e.g., Calzada v. Astrue, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010).

But more importantly, from what *is* in the record, the ALJ appears to have never determined whether plaintiff was disabled at any time before the date of his application. This is a substantive problem. The ALJ would not be able to determine whether plaintiff was disabled at age three using characteristics that apply to a 19-year-old. And if the ALJ was determining whether plaintiff was disabled at 19 only, the decision incorrectly assumes that the disability began at the date of the application and not at the alleged disability onset date, which ignores the possibility that the rest of the evidence was affected by limitations caused by a disability plaintiff suffered at a young age.

Either way, the decision cannot stand. Even if plaintiff could not receive entitlements before the date of his application, the decision does not and could not, based on the factually inaccurate findings, address whether plaintiff was disabled for any period of time after the alleged disability onset date through the date of the decision.

Failing to actually apply the correct alleged onset date is not a distinction without a difference, as the Commissioner argues. Doing so affected the ALJ's view of the evidence and how he weighed it. The ALJ's mischaracterization of important details appeared to bear heavily on the ALJ's determination of plaintiff's credibility and the extent of plaintiff's mental limitations and impacted his view of the credibility of other sources and evidence available in the record.

Most noticeably, before finding plaintiff's RFC at step four, the ALJ incorrectly stated that plaintiff's work history showed "that he worked only sporadically prior to the alleged disability onset date." That is obviously wrong because the plaintiff did not work at all before the alleged disability onset date – which was when he was three years old. In an objective evaluation, that mistake indeed might not matter because a finding of sporadic work at step four will generally weigh in favor of a finding of disability – it is close to a finding of no work history at all – or at least progress the analysis to step five. See 20 C.F.R. § 404.1560 (b) (" Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it."); 20 C.F.R. § 404.1565(a) (" If you have no work experience or worked only 'off-and-on' or for brief periods of time during the 15-year period [prior to the disability onset date], we generally consider that" past work is not relevant to a determination of disability). But what the ALJ did here was turn what was supposed to be a factor weighing in favor of disability into a factor weighing in favor of non-disability.

Plaintiff submitted evidence showing that he had worked at Wal-Mart part-time for roughly two months doing auto work such as tire rotations and oil changes; at the time of the hearing, he had worked at Castrol Oil part-time for roughly three weeks, doing substantially the

5

same amount of work.  It was this work history, according to the ALJ, that raised the question of whether plaintiff's continued unemployment was "actually due to medical impairments."  The conclusion is based here on a false predicate, namely, that plaintiff had worked at all prior to his alleged disability onset date.  Although the exact dates of plaintiff's previous employment were unknown, it is obvious that these jobs were *after* the plaintiff's alleged disability onset date.  Surely plaintiff was not rotating tires as a three year old.

The incorrect assumption of the onset date shows that the ALJ missed the boat as to the relevance of plaintiff's work history, and further indicates that he cherry-picked evidence to support his preferred finding.  Having no relevant work history is supposed to work in plaintiff's favor to support a finding he was disabled at step four.  Yet the ALJ stated the sporadic work history somehow indicated that plaintiff's continued unemployment was not "actually due to medical impairments."  This is an *ipse dixit* – it begins from a presumption that plaintiff is not disabled, in order to use factors tending to support disability as support for concluding that plaintiff is not disabled.  An ALJ must not misconstrue evidence in a manner that supports his own conclusion; he is to weigh all of the evidence without opinion or bias or hypothesis to determine impartially whether plaintiff is disabled under the law.

In this case, understanding the timeline of plaintiff's work history or education in connection to his alleged disability onset date is important evidence to support both the medical opinions and the testimony of plaintiff and his mother regarding his limitations.  The sporadic and short-lived nature of plaintiff's work history, for instance, appears consistent with the medical opinions in the record which state that plaintiff suffered from Attention Deficit Hyperactivity Disorder ("ADHD") and had a borderline range of cognitive functioning, which together resulted in poor focus, poor organization, impatience, impulsiveness, and limitations in

understanding and remembering simple instructions. It also appears consistent with the opinions of other sources such as the social worker and vocational rehabilitation counselor, and the testimony by plaintiff and plaintiff's mother.

The ALJ also discounted plaintiff's testimony due to his erroneous reading of plaintiff's written statement. This statement was significant in determining the extent of plaintiff's limitations and plaintiff's credibility, not because of the information it contained, but because of how the statement was written. The ALJ found that plaintiff had no problem with reading, writing, or self-expression because he wrote a "brief explaining his present physical and mental state that was clear and easy to read with appropriate grammar and syntax." However, plaintiff was not the one who wrote the statement; his lawyer did. This was made crystal clear at the hearing:

> ALJ: . . . It's a statement by Marc [the plaintiff] and I wanted to find out whether that's Marc's handwriting?
>
> ATTY: No, I said prepared by counsel. That's my handwriting, Judge.
>
> [. . .]
>
> ALJ: . . . I wanted to find out because I don't know who wrote that.
>
> ATTY: I say at the beginning of the form, the beginning of this, it says prepared by counsel at some point. Oh, here, right here. It says this document was prepared by my attorney Valerie Brown. I wrote it and I had Ms. Solomon in my office.
>
> ALJ: So that's your handwriting?
>
> ATTY: My words, my handwriting and then I read it to Ms. Solomon and to Marc to make sure that everything was correct. . . .

Despite this exchange between counsel and the ALJ, the ALJ nevertheless inexplicably discredited claimant because "this statement *written by the claimant* counter[ed] his allegations that he does not read and has trouble with reading and writing since *he is able to clearly explain*

7

*himself and the nature of his allegations*" (emphasis added). The ALJ used the way in which the statement was written as contradictory evidence where no such evidence existed and, in fact, the substance of plaintiff's statement was consistent with his allegations, testimony, and other evidence of his mental limitations in daily activities.

The ALJ's misapprehension of these facts is troubling, particularly when combined with statements that question plaintiff's veracity instead of viewing plaintiff's testimony in light of the evidence of mental limitations in the record.[3] For instance, the ALJ noted that, although plaintiff "has a learning disability that impacts his ability to perform specific functions, his behavior in school calls into question whether his impairments are as disabling as he is alleging." But his behavior in school is fully consistent with and confirmatory of his impairments. The ALJ also found plaintiff's testimony that he left his job at Wal-Mart due to back issues and headaches inconsistent with that of a vocational rehabilitation counselor, who had recalled that plaintiff had "abandoned" the job after he fell out of communication with his site supervisor. These statements, and others throughout the ALJ's decision, appear to go beyond misapprehending the facts to misapprehending the nature of certain mental limitations and how they may present themselves.

As noted above, it is unclear to what extent the ALJ's mistaken factual conclusions permeated determinations about the credibility of witnesses and the record, but it appears to have been a factor in how the ALJ viewed the record as a whole and weighed others' opinions.

---

[3] The ALJ also made passing references to plaintiff's physical impairments, though it is not clear whether he was also referencing plaintiff's mental impairments when he stated that, "although the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and/or conservative in nature. Despite complaining of physical pain and ailments, the claimant sought no treatment." Plaintiff went to physical therapy for his knee pain, and also took medication for his ADHD and received vocational rehabilitation; the ALJ's observation is therefore wrong. But even if it were correct, "[j]ust because plaintiff's disability went untreated does not mean he was not disabled." Shaw v. Chater, 221 F.3d. 126, 133 (2d. Cir. 2000). Nor is a conservative treatment regime substantial evidence that plaintiff is not physically disabled. Id.; Burgess v. Astrue, 537 F.3d 117 (2d Cir. 2008).

For example, the lack of longitudinal history with plaintiff appeared to be a deciding factor for the physicians presented by plaintiff, but played no role in the weight given to consultative examiners. The ALJ found, without known reason, that plaintiff's doctor, Dominic Ferro, had made a one-time examination of plaintiff – despite plaintiff's mother's testimony to the contrary[4] – and that this meant that it would not "accurately ascertain his level of functioning over a period of time." It is unclear from the ALJ's decision why that would be the case. Similarly, Carl Rosenmann's psychiatric opinion was given little weight because he did not have longitudinal treatment history, was obtained for the purpose of the SSI application, and the conclusory statement that Dr. Rosenmann's "basis for finding the claimant marked in the aforementioned categories is poorly supported." The ALJ also discounted the opinion of social worker Davida Levenson, stating that her opinion is "less credible" than an established medical source. Further, the extensive case notes taken over approximately a year and a half by Patricia Weiss, a vocational rehabilitation counselor, formed the basis for her written opinion of plaintiff, including that plaintiff presented much less disabled than he actually was. Although these notes were taken over a significant period of time, the ALJ did not discuss whether he gave any weight to this opinion, as supported by evidence in its own right. He merely noted that it does not support a finding of full disability and was inconsistent with plaintiff's testimony and therefore undermined his credibility. In fact, it appears that the ALJ misunderstood Ms. Weiss' opinion as having meant that plaintiff was much less disabled than he appeared, when she was stating the exact opposite. Yet her properly understood opinion could be very important, because it takes no medical degree to understand that many people with learning disabilities present at first view as

---

[4] Plaintiff and plaintiff's mother both testified that plaintiff saw Dr. Ferro on two occasions. It was Dr. Ferro who prescribed medication for plaintiff's ADHD. Plaintiff's mother also stated that she could not afford to continue seeing Dr. Ferro because his fee was expensive.

9

essentially unimpaired, and it is only when one gets to know them well that the degree of impairment becomes apparent.

The opinions given the most weight were those of the consultative examiners, who, of course, also examined plaintiff one time and who also did not have a longitudinal history with plaintiff. In their case, however, the consultative examiners' "programmatic expertise" or familiarity with the Social Security disability program was a reason for giving their opinions more weight. I'm not sure why this is at all relevant, since the consultative examiner is to offer medical opinions, and the ALJ is to determine plaintiff's RFC and whether he is disabled under the law. See 20 C.F.R. § 404.1546; Dowdy v. Barnhart, 213 F.Supp.2d 236, 246 (E.D.N.Y. 2002) ("The ALJ is solely responsible for deciding a plaintiff's residual functional capacity.").

In addition, the only consultative doctor to examine plaintiff was a family medicine doctor, Mark Johnston. He noted that plaintiff had a history of mild intellectual impairment and ADHD, and individualized education services and medication, and even he recommended neurocognitive testing "to document the extent of limitations caused by intellectual impairment and [ADHD]." This was not done. Given the "great weight" he afforded Dr. Johnston's opinion and the "little weight" he afforded others when it came to plaintiff's mental limitations, failing to develop the record and relying on an incomplete assessment was error.

The ALJ also assigned weight to his own opinion, after his own admittedly brief interaction with plaintiff, against the examinations and opinions submitted by plaintiff. The ALJ believed plaintiff "betrayed no evidence of debilitating symptoms" while he testified at the hearing, and gave his own opinion "some slight weight." Again, it is just common sense that someone with ADHD can appear unimpaired for a relatively brief encounter. Yet the ALJ gave contrary opinions from specialists "little weight" because of the lack of longitudinal history with

plaintiff and because the exams were solely for the purpose of plaintiff's applications for Social Security benefits.

This view of both longitudinal history and impetus for examination was applied inconsistently, as evidenced by the juxtaposition of opinions which received weight because of or in spite of those factors depending on the position of the medical professional. More importantly, it substituted the ALJ's opinion for that of the medical professionals. "[I]t is well-settled that the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion" and that while an ALJ is "free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion to or testified before him." Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (quoting McBrayer v. Secretary of Health and Human Servs., 712 F.2d 795, 799 (2d Cir. 1983)) (internal quotation marks and brackets omitted). Further, the ALJ's brief interaction with plaintiff is not "the overwhelmingly compelling type of critique that would permit the Commissioner to overcome an otherwise valid medical opinion." Shaw v. Chater, 221 F.3d 126, 135 (2d Cir. 2000) (citing Wagner v. Secretary of Health and Human Servs., 906 F.2d 856 (2d Cir. 1990)); see also Wagner, 906 F.2d at 862 ("a circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion" even where physician's opinion might contain inconsistencies).

Lastly, the ALJ only briefly discussed the credibility of plaintiff's mother, who testified at the hearing. The ALJ stated that "while her observations are certainly valuable in assessing the nature and severity of the claimant's impairments, they offer little probative value in determining the claimant's [RFC]." As to why this is the case, the ALJ merely "note[d] that

11

these statements were composed by a party sympathetic to the claimant and must be viewed as such as [claimant's mother's] testimony appeared to underestimate the activities of daily living of her son, the claimant." This finding is not sufficiently specific to review. See Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 260–61 (2d Cir. 1988) ("A finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." (citing Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 643 (2d Cir. 1983))). In particular, it is not clear whether the ALJ used medical evidence to support his finding, or whether he was relying on his own assessment of plaintiff's mental limitations – or whether he did not find credible the testimony of the person with the most knowledge, aside from plaintiff, as to plaintiff's daily activities and difficulties, merely because plaintiff's mother was, well, his mother.

An ALJ must weigh the credibility of the claimant's testimony in light of the other evidence on the record, see Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010), and consider the extent to which the claimant's symptoms can be reasonably accepted as consistent with the medical evidence, see 20 C.F.R. § 404.1529(a). Here, plaintiff presented evidence from medical and other sources that plaintiff could not maintain full-time employment in a competitive environment because he had ADHD and borderline intellectual functioning. Plaintiff testified and presented other evidence that these mental impairments meant he had trouble counting change, remembering to bathe or turn off the oven, understanding and following through on directions, keeping focus, and maintaining employment. The ALJ mischaracterized evidence in the record, which led him to nearly summarily dismiss plaintiff's testimony and the medical evidence that bolstered it. Rather than considering plaintiff's mental limitations and their

symptoms in light of the record as a whole, the ALJ instead chose only those opinions or portions of opinions that supported finding that plaintiff was not disabled.

I understand that there are of course a number of insubstantial ADHD claims. But there are also real ADHD claims. There is plenty of evidence here to suggest that this one may be in the latter category, and the ALJ simply selected those portions of the record that would place it in the former. But the above errors evidence that the ALJ's decision did not comply with his obligation to consider all of the relevant medical and other evidence. See 20 C.F.R. § 404.1545(a)(3); see also Genier, 606 F.3d at 50. It is therefore not supported by substantial evidence.

Plaintiff's [12] motion for judgment on the pleadings is granted and the Commissioner's [14] cross-motion is denied. The case is remanded so that the ALJ may properly determine whether plaintiff is disabled in light of plaintiff's and plaintiff's mother's testimony regarding symptoms and mental limitations, the opinions of plaintiff's physicians and other sources, and the extent to which some of plaintiff's daily activities, lack of work history, or even testimony, are indicative of mental limitations. In addition, the ALJ should consider whether plaintiff meets the medical criteria for Listing 12.04 or 12.05 in light of the evidence and, in particular, the

testimony as to plaintiff's trouble with daily activities and issues relating to maintaining steady employment. On remand, the ALJ should also submit plaintiff for a complete battery of neurological testing.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       July 30, 2016